No. 13,488.

THOMAS, CONSERVATOR, ET AL. *v.* FIRST NATIONAL BANK OF PRICE, UTAH.

(51 P. [2d] 589)

Decided September 9, 1935. Rehearing denied November 25, 1935.

Messrs. McMullin, Sternberg & Helman (Mr. John T. Adams on petition for rehearing), for plaintiff in error.

Mr. Henry Ruggeri, Messrs. Moynihan, Hughes & Knous, for defendants in error.

*In Department.*

Mr. Justice Bouck delivered the opinion of the court.

An action was brought by the First National Bank of Price, Utah, as plaintiff, against the Grand Valley National Bank of Grand Junction, Colorado, and its conservator, Thomas, as defendants, to replevy 350 head of sheep. The plaintiff prevailed, the judgment being in the alternative for delivery or for $1,748.14 as the value. Defendants ask us for a reversal.

The case involves two chattel mortgages. One of these chattel mortgages was given in Utah by one J. A. Brown and his wife Mary to the Utah bank on November 1, 1930, to secure the payment of their promissory note for $3,400, this mortgage purporting to create a lien on sev-

eral hundred head of sheep owned by the Browns. It was duly filed in Utah, but was not filed in Colorado. The other mortgage involved was given in Colorado by the Swapp Livestock Company to the Colorado bank in December of 1932, to secure the payment of the company's promissory note for $9,000, this mortgage being in renewal of a previous mortgage given originally for $10,800 by the Swapp company to the Colorado bank in May of 1932. The last Swapp company mortgage was duly recorded in Mesa County, Colorado. It covered some 1400 head of sheep described as the property of the company, but is alleged by the defendants to include also the Brown sheep, which on the other hand are charged by plaintiff to have been wrongfully seized by the Colorado bank when taking possession under the Colorado mortgage.

According to the Utah bank, the sheep mentioned in the Utah mortgage held by it were at all times the property of the Browns, and they constitute the subject of the replevin suit now before us for review.

The contentions on behalf of the defendant Colorado bank and its conservator in support of their assignments of error are seven in number and will be discussed in the same order in which they are presented.

1. It is argued that the Utah mortgage, not being filed in Colorado, cannot be recognized as against the Colorado mortgage. This argument might be a cogent one if the second of the two rival mortgages had been given by the owner of the property covered by the first, or by a person claiming under him or being in privity with him; in other words, if the Colorado bank had brought itself within the class of third persons or lien creditors protected by the Colorado statutes. Here such is not the case. The only way in which the defendants attempted to establish a sufficient interest in themselves was by alleging in their answer that the Brown sheep had been turned over to the Swapp company upon the latter's agreement to assume any mortgage thereon

which the plaintiff might hold. There was, however, a total failure to prove this allegation. So far as the evidence shows, the plaintiff Utah bank was right in claiming that the property covered by the Utah mortgage was the property of the Browns. The title is not shown to have passed to the Swapp company in whole or in part.

2. It is further argued that the description in the Utah mortgage is insufficient to create a lien on the Browns' sheep. Any alleged defect in the description becomes immaterial if, as a matter of fact, the mortgagee in the Colorado mortgage is legally not in position to attack the transaction. *Casco Co. v. Central Co.*, 75 Colo. 478, 226 Pac. 868. A certain arrangement had been made by the Browns with the Swapp company whereby the Browns' sheep were herded with the Swapp sheep for grazing purposes, to save expense thereby. The property mortgaged by the Browns being theirs, and no interest therein having passed to the Swapp company by the joint grazing, the company presumptively had no right to include it in the Colorado mortgage. If it were otherwise, even stolen property could in the same way be taken from its rightful owner. The general rule is that a mortgage like the Utah mortgage is valid between the immediate parties, irrespective of defects, errors or circumstances which would invalidate it as against one who—unlike the Colorado bank—has acquired a title (from the owner who has previously given such a mortgage on the same property) through a bona fide purchase from the owner, without notice of a weakness in the title, or through a similarly bona fide encumbrance created by such owner. Only a valid estoppel would prevent the plaintiff from successfully invoking this rule under the facts and circumstances here in evidence. We shall consider under subdivision "4" whether such an estoppel has taken place in the present instance.

3. It is also contended that ownership of the Browns' sheep cannot lawfully be established by earmarks not described in the Utah mortgage and not recorded under

478

the Colorado brand recording act. This point is disposed of, against the defendants' contention, by the foregoing discussion under subdivision "2."

■ 4. It is said that, by reason of the three propositions above contended for, and in view of the uncontradicted evidence in the case, the plaintiff is estopped to claim against the Colorado bank. Without undertaking to give a technically correct and complete definition of estoppel, we may say that estoppel can arise only where the one relying thereon has changed his position to his material detriment because of the conduct of the other party. The record here is wholly lacking in substantial evidence to that effect. There was no estoppel.

■ 5. It is urged that, if the aforesaid four legal propositions are not tenable, nevertheless in view of substantial conflicts in the evidence the trial court erred by directing a verdict in favor of the plaintiff as to 283 of the 306 sheep whose possession was awarded to the plaintiff. Having determined the foregoing contentions "1," "2," "3" and "4" against the defendants, we shall now consider whether there was any substantial contradiction of the evidence concerning plaintiff's right to the possession of the 283 sheep as to which the trial court directed the jury to find in favor of the Utah bank. A careful reading of the record fails to disclose any conflict. By our perusal and interpretation of the record we can detect nothing to overcome or weaken the evidence that the aforesaid 283 sheep were the property of the Browns. As already stated, there is no evidence indicating that the Browns transferred, or purported or attempted to transfer, their title to the Swapp company or to its mortgagee, the Colorado bank. No error is apparent in directing the verdict relative to the 283 sheep.

■ 6. It is insisted that the court erred by permitting the jury to award interest when no damages or interest were asked. But no objection on this ground was made either to the instructions or to the verdict or to the judgment. Therefore, according to a well-known rule,

the defendants are not entitled to complain if the jury followed the instructions so that as a consequence the interest has become an integral part of the final judgment.

7. It is asserted, finally, that the court erred by submitting to the jury the question of plaintiff's right to 23 smooth-ear or unmarked ewes when they were not described in the Utah mortgage, the complaint, or the writ, and were not seized by the sheriff, and no claim was made for them by plaintiff until the trial. The record in relation to these 23 ewes reveals no prejudicial error. There is no valid reason why the discretionary power of the trial court to disregard errors and to permit amendments in pleadings and process should be curtailed in a particular case because it happens to be a replevin suit. Evidence was introduced tending to establish that these ewes were among the sheep on which the Browns intended to and did give the Utah bank a lien by the Utah mortgage. The district court did not abuse its discretion when it ruled that the plaintiff might amend to conform to this proof.

Our conclusion is that no reversible error was committed by the trial court.

Judgment affirmed.

MR. CHIEF JUSTICE BUTLER and MR. JUSTICE HOLLAND concur.