Opinions of the Colorado Supreme Court are available to the
public and can be accessed through the Judicial Branch's homepage at
http://www.courts.state.co.us. Opinions are also posted on the
Colorado Bar Association's homepage at http://www.cobar.org.

ADVANCE SHEET HEADNOTE

**2019 CO 67**

**No. 18SA212, *Santich v. VCG Holding Corp.*—Contract Enforcement—Arbitration—
Equitable Estoppel.**

The supreme court accepted jurisdiction over a certified question of law from the
United States District Court for the District of Colorado to determine whether there
should be an arbitration-specific exception to Colorado's traditionally defined doctrine
of equitable estoppel. The court holds that Colorado's law of equitable estoppel applies
in the same manner when a dispute involves an arbitration agreement as it does in other
contexts. The supreme court recognizes that under Colorado law, equitable estoppel
requires proof of four elements—one of which is detrimental reliance. Thus, a
nonsignatory to an arbitration agreement can only assert equitable estoppel against a
signatory in an effort to compel arbitration if the nonsignatory can demonstrate each of
the elements of equitable estoppel, including detrimental reliance.

# The Supreme Court of the State of Colorado
2 East 14th Avenue • Denver, Colorado 80203

---

**2019 CO 67**

---

**Supreme Court Case No. 18SA212**
*Certification of Question of Law*
United States District Court for the District of Colorado Case No. 17CV00631-RM-MEH

---

### Plaintiffs:

Georgina Santich, Amanda Livingston, Rebecca Rail, Amanda Gabriel, Casandra Windecker, Gale Raffaele, Adrianne Axelson, Amanda Shafer, Brandi Campbell, Penny Watkins, Arielle Mansfield, Emily Bachelder, Amrica Terrell, Melanie Tracy, Ashley Wozneak, Laportia Oakley, Alexis Nagle, Janel Anderson, Porscha Green, Johanna Grissom, Karla Martinez, Amy Glines, Chada Mantooth, Ariel Cline, Alena Bailey, Jessica Saulters-Archuleta, Melissa Chavez, Talita Catto, Megan Fitzgerald, Christina Massaro, Andrea Abbott, Nicole Bujok, Rachel Berry, and Kimberly Hale, all individually and on behalf of all others similarly situated,

v.

### Defendants:

VCG Holding Corp.; Lowrie Management, LLLP; Denver Restaurant Concepts LP d/b/a PT's Showclub; Troy Lowrie; Michael Ocello; Kenkev, II, Inc. d/b/a PT's Showclub Portland; Indy Restaurant Concepts, Inc. d/b/a PT's Showclub Indy; Glenarm Restaurant LLC d/b/a Diamond Cabaret; Glendale Restaurant Concepts, LP d/b/a The Penthouse Club; Stout Restaurant Concepts, Inc. d/b/a La Boheme; and VCG Restaurants Denver, Inc. d/b/a PT's All Nude.

---

### Certified Question Answered
*en banc*
June 24, 2019

---

**Attorneys for Plaintiffs:**
Killmer, Lane & Newman, LLP
Mari Newman
Liana Orshan
*Denver, Colorado*

Towards Justice
David H. Seligman
*Denver, Colorado*

**Attorneys for Defendants:**
Berg Hill Greenleaf & Ruscitti LLP
Rudy E. Verner
*Boulder, Colorado*

Jackson Lewis P.C.
Collin O'Connor Udell
*Hartford, Connecticut*

Jackson Lewis P.C.
Ryan P. Lessmann
Melisa H. Panagakos
*Denver, Colorado*

Jackson Lewis P.C.
Allan S. Rubin
*Southfield, Michigan*

**Attorneys for Amicus Curiae the Colorado Trial Lawyers Association:**
Lowrey Parady, Attorneys at Law
Sarah J. Parady
*Denver, Colorado*

**Attorneys for Amici Curiae National Employment Lawyers Association and Plaintiff Employment Lawyers Association:**
Sweeney & Bechtold, LLC
Joan M. Bechtold
*Denver, Colorado*

**JUSTICE HART** delivered the Opinion of the Court.

¶1     Under Colorado law, equitable estoppel requires proof of four elements.  One of those elements has long been detrimental reliance on the words or actions of the party against whom estoppel is sought.  In this case, we accepted jurisdiction over a certified question of law from the United States District Court for the District of Colorado that requires us to determine whether there should be an exception to that requirement in the context of arbitration agreements.[1]  We hold that Colorado's law of equitable estoppel applies in the same manner when a dispute involves an arbitration agreement as it does in other contexts.  Thus, a nonsignatory to an arbitration agreement can only assert equitable estoppel against a signatory in an effort to compel arbitration if the nonsignatory can demonstrate each of the elements of equitable estoppel, including detrimental reliance.

## I.  Facts and Procedural History

¶2     In 2017, a group of current and former exotic dancers sued the owners of clubs where they perform and the club owners' corporate parent companies in the United States District Court for the District of Colorado.  The plaintiffs allege in their amended complaint that the defendants acted in concert to wrongfully deprive the dancers of basic protections provided by law to employees.  The plaintiffs contend that they have been

---

[1] We accepted jurisdiction to answer the question:

> What elements must be established by a nonsignatory to an arbitration agreement in order for the doctrine of equitable estoppel to apply and thereby require a signatory to an arbitration agreement to arbitrate claims brought against a nonsignatory?

misclassified as nonemployee "independent contractors" or "lessees" pursuant to "Entertainment Lease" agreements that identify the club-owner defendants as "landlords" rather than employers. According to the plaintiffs' pleadings, the club-owner and corporate-parent defendants are jointly and severally liable for denying the dancers earned minimum wages and overtime pay, confiscating or otherwise misallocating their gratuities, charging them fees to work, and subjecting them to onerous fines.

¶3 The club-owner defendants have successfully compelled arbitration of the plaintiffs' claims based on the arbitration clause included in the agreements the dancers signed with the club owners. The corporate-parent defendants seek to do the same, but because they were not parties to the agreements or to any other written contract with the dancers, they have to find a different hook to compel the dancers into arbitration. They argue that the dancers should be equitably estopped from litigating their claims against one set of defendants because they are in compelled arbitration of the same claims against the other set of defendants.

¶4 A federal magistrate judge examined Colorado state contract law and recommended that the district court accept that argument and compel the arbitration of the plaintiffs' claims against the corporate-parent defendants. The recommendation was predicated, in large part, upon a prediction that this court would agree with the court of appeals' decision in *Meister v. Stout*, 2015 COA 60, 353 P.3d 916. In that case, a division of the court of appeals concluded that when a signatory to a contract containing an arbitration clause asserts a claim arising from that contract against a defendant who was

4

not a party to the contract, he may be estopped from avoiding arbitration and instead be compelled to arbitrate by and with the nonsignatory defendant. *Id.* at ¶¶ 6, 13–18, 353 P.3d at 919, 920–22. Relying on *Meister*, the magistrate judge determined that, although they had not signed the agreements, the corporate-parent defendants are entitled to enforce the arbitration provisions against the plaintiffs because the claims asserted against all defendants are interdependent and intertwined with duties and obligations in the Leases. The plaintiffs challenged the magistrate judge's recommendation, urging the federal district court to certify to this court the question whether nonsignatories to an arbitration agreement may invoke the doctrine of equitable estoppel in the absence of a showing of detrimental reliance.

¶5 The federal district court observed that "[a]s it currently stands, *Meister* fails to address the [reliance] issue and the Court is unclear whether this element is required under Colorado law . . . [because] there is no controlling precedent in the decisions of the Colorado Supreme Court." The district court therefore certified the question to this court, and we accepted the certification. *See* C.A.R. 21.1.

## II. Analysis

¶6 The enforceability of arbitration agreements is governed by traditional principles of state contract law. *Arthur Andersen LLP v. Carlisle*, 556 U.S. 624, 630–31 (2009). In most instances, only the parties to a contract can compel arbitration under that contract and only as to another signatory of the contract. *See N.A. Rugby Union LLC v. U.S. Rugby Football Union*, 2019 CO 56, ¶20, ___ P.3d ___. If no such agreement exists between particular litigants, as is the case here, there are certain limited circumstances in which a

nonsignatory to an arbitration agreement may compel a signatory to arbitrate. *Id.* at ¶ 21. These limited circumstances include: "(1) incorporation of an arbitration provision by reference in another agreement; (2) assumption of the arbitration obligation by the nonsignatory; (3) agency; (4) veil-piercing/alter ego; (5) estoppel; (6) successor-in-interest; and (7) third-party beneficiary." *Id.* Here, the nonsignatory corporate-parent defendants argue that they fit within the equitable estoppel exception. Thus, to answer the certified question, we must consider how the doctrine of equitable estoppel has been applied in Colorado.

¶7 Under our state law, equitable estoppel is generally understood as arising "where one party induces another to detrimentally change position in reasonable reliance on that party's actions through words, conduct, or silence." *V Bar Ranch LLC v. Cotten*, 233 P.3d 1200, 1210 (Colo. 2010) (citing *City of Thornton v. Bijou Irr. Co.*, 926 P.2d 1, 75 (Colo. 1996)). However, Colorado law has never favored estoppel. *See Dove v. Delgado*, 808 P.2d 1270, 1275 (Colo. 1991) ("The doctrine of estoppel is not favored . . . and will be applied only when all of the elements constituting an estoppel are clearly shown."); *Univ. of Colo. v. Silverman*, 555 P.2d 1155, 1158 (Colo. 1976) (same); *Susman v. Exch. Nat'l Bank of Colo. Springs*, 183 P.2d 571, 573 (Colo. 1947) (same); *see also Langley v. Young*, 211 P. 640, 642 (Colo. 1922) ("[The] doctrine is not regarded with favor and should be applied only when all the elements constituting an estoppel clearly appear."). For this reason, we have consistently held that the doctrine "will be applied only when all of the elements constituting an estoppel are clearly shown." *Dove*, 808 P.2d at 1275 (citing *Susman*, 183 P.2d at 573).

¶8 Under this court's longstanding precedent, estoppel may not be applied as a bar absent a clear showing of each of the following four elements:

> [T]he party against whom the estoppel is asserted must know the [relevant] facts; that party must also intend that its conduct be acted upon or must lead the other party to believe that its conduct is so intended; the party claiming estoppel must be ignorant of the true facts; and the party asserting the estoppel must detrimentally rely on the other party's conduct.

*Jefferson Cty. Sch. Dist. No. R-1 v. Shorey*, 826 P.2d 830, 841 (Colo. 1992) (citing *Dove*, 808 P.2d at 1275; *Dep't of Health v. Donahue*, 690 P.2d 243, 247 (Colo. 1984)).

¶9 In *Meister*, the court of appeals broke from that long line of precedent and endorsed an "alternative theory of estoppel" not previously recognized by Colorado courts. ¶¶ 13–15, 353 P.3d at 920–21. The division acknowledged that it was creating a new breed of equitable estoppel in Colorado, but it found the reasoning of courts from other jurisdictions that had adopted this arbitration-specific rule persuasive. *See id.* The new theory adopted by *Meister* provides that equitable estoppel would apply where (1) "a signatory must rely on the terms of a written agreement containing an arbitration provision to assert its claims against a nonsignatory" or (2) the "signatory alleges substantially interdependent and concerted misconduct by a nonsignatory and one or more signatories" and the claimed misconduct "is intertwined with duties or obligations arising from the underlying contract." *Id.* at ¶¶ 14–15, 353 P.3d at 921. This theory of equitable estoppel would apply even in circumstances where the party seeking to assert estoppel made no showing of detrimental reliance.

7

¶10     The court of appeals appears to have adopted this new theory of equitable estoppel because "Colorado has a strong policy favoring arbitration agreements." *Id.* at ¶ 10, 353 P.3d at 920. That rationale is not sufficient to support the creation of an entirely new theory of equitable estoppel that is unmoored from the basic premise of the doctrine, that it "arises where one party induces another to detrimentally change position in reasonable reliance on that party's actions through words, conduct, or silence." *V Bar Ranch*, 233 P.3d at 1210. As the New Jersey Supreme Court said in rejecting the same theory that we reject here: "Equitable estoppel is more properly viewed as a shield to prevent injustice rather than a sword to compel arbitration." *Hirsch v. Amper Fin. Servs.*, 71 A.3d 849, 852 (N.J. 2013); *see also Ervin v. Nokia, Inc.*, 812 N.E.2d 534, 542–43 (Ill. App. 2004) (declining to adopt this theory of equitable estoppel because it is inconsistent with state law on estoppel); *B.C. Rogers Poultry, Inc. v. Wedgeworth*, 911 So. 2d 483, 491–92 (Miss. 2005) (same). We see no compelling reason to depart from our traditionally defined elements of equitable estoppel to craft an arbitration-specific rule.

¶11     Of course, nonsignatories to a contract containing an arbitration provision might be able to compel arbitration on equitable estoppel grounds, but to do so they would need to prove all four traditionally defined elements of the doctrine, including, but not limited to, the element of detrimental reliance. We therefore disavow *Meister*'s endorsement of

a special estoppel rule predicated upon the interconnectivity of claims and actions taken in concert by signatories and nonsignatories to an arbitration agreement.[2]

### III. Conclusion

¶12     In keeping with long-standing Colorado law, an equitable estoppel argument raised by a nonsignatory to a contract who seeks to enforce an arbitration provision must be supported by all four traditionally defined elements of equitable estoppel.

---

[2] We recognize that our answer to the certified question may result in piecemeal litigation in which related claims simultaneously proceed in court and arbitration. But "'policy reasons' alone cannot replace . . . necessary predicate[s] for the application of equitable estoppel." *Goldman v. KPMG, LLP*, 92 Cal. Rptr. 3d 534, 553 (Cal. Ct. App. 2009).