567 P.2d 1284

**R. Kay OBRAY, d/b/a Circo Painting Contractors, Plaintiff-Respondent and Cross-Appellant,**

v.

**Leslie L. MITCHELL, d/b/a Mitchell Construction Company, Defendant-Appellant and Cross-Respondent.**

No. 12114.

Supreme Court of Idaho.

Aug. 29, 1977.

John B. Kugler, Pocatello, for appellant and cross-respondent.

Robert C. Huntley, Jr., of Racine, Huntley & Olson, Pocatello, for respondent and cross-appellant.

McFADDEN, Chief Justice.

This action was brought in two counts by respondent and cross-appellant R. Kay Obray for the recovery of certain monies alleged by him to be due and owing from appellant and cross-respondent Leslie L. Mitchell. Mitchell was the general contractor on two condominium projects in Colorado, Wild Irishman Condominiums and Shareholders Condominiums, on which Obray subcontracted to do the painting. After completing the work under the original contract, Obray performed certain additional services, or "extras" on these condominiums. He brought this action against Mitchell to recover the amounts allegedly owing for these extras.

In his amended complaint, Obray, in Count I, alleged that the value of the unpaid-for services performed on the Wild Irishman Condominium is $12,710.28. In Count II Obray alleged that he is due $1,629.14 for work on the Shareholder's Condominium. It is further alleged that as to this second claim the parties had agreed to a compromise of $500, but that Mitchell failed to tender this amount on time and as a result is now liable for the full $1,629.14.

Mitchell, in his answer, admitted liability for a portion of these "extras." He alleged tender of $1,613.96 to Obray as payment in full on the Wild Irishman claim but that Obray rejected this tender. He admits that he did not originally forward the $500 compromise to Obray, but alleges that it has now been tendered and paid into court. As an affirmative defense, Mitchell claims that if Obray is found to be entitled to be paid for these extras Mitchell is not liable because the work was "authorized or sought by the owner or some other third party" and as such is not the responsibility of appellant or, in the alternative, "that the work was necessitated by deficiencies in plaintiff's own services."

The district court awarded Obray judgment on Count I for $12,710.28 plus interest in the amount of $1,440.47. As to Count II the court held Obray to the $500 compromise and awarded that amount. In its amended memorandum decision and order the court deleted the award of interest on Count I. Final judgment was rendered in the amount of $12,710.28 plus $59.00 in costs.[1]

Mitchell has appealed from the judgment against him. Obray has cross-appealed from the $500 judgment on Count II and the deletion of the award of interest.

The record indicates that following completion of the painting on the two projects, Obray was asked by Mitchell to return to Colorado and repair some drywall work which had apparently been poorly done by the drywall subcontractor. Obray was also asked to do work on other items including doors, windows, frames, casings and baseboards. After returning to Colorado, Obray performed additional work on the condominiums.

■ Mitchell's initial contention is that he is not liable for the "extras" because he did not sign a purchase order for the additional work as required by the Mitchell/Obray contract.[2] The trial court found that during the course of the subject contract and during the previous contracts it was the practice of Mitchell to ignore this requirement and contract for the extra work by oral agreement. The court held that Mitchell had effectively waived the purchase order requirement and could not now rely on it for purposes of denying Obray's claim. We agree.

In *Harrington v. McCarthy*, 91 Idaho 307, 420 P.2d 790 (1966), this court stated:

"The rule is well recognized that the provision in a private building or construction contract that alterations or extras must be ordered in writing can be avoided by the parties to the contract where their words, acts or conduct amount to a waiver, modification, rescission or abandonment of that provision or where the owner by his acts or conduct is estopped to rely on it."

In *Harrington* this court held that prior conduct of the appellant in failing to require written change orders constituted a waiver of the contract provision requiring the same. The evidence in the present case supports the same conclusion.

■ Mitchell also maintains that the owners of Wild Irishman, or some third party, but not he, should be liable for the extra work which Obray was requested to do after returning to Colorado. The record supports his contention that the work was ordered or authorized by the owners; the evidence, however, does not show that the owners indicated they would directly compensate Obray for the work performed. In addition, the record shows that either Mitchell, his general superintendent, or his job superintendent was present each time Obray agreed to perform these extras, and that at no time did Mitchell or his agents ever object to the work being done by Obray.

Mitchell's own job superintendent, Red Martin, when questioned as to specific extras performed by Obray, testified that Obray was not asked directly by the owner to perform the work but that the decisions were made at a conference between Mitchell's representatives (including Martin), the owners and Obray. With reference to specific extras, Martin stated that Mitchell was

---

1. The court apparently unintentionally neglected to include the $500 award in the amended judgment.

2. The contract states that the subcontractor agrees,

"to make no claim for extras unless the same shall be fully agreed upon in writing by the contractor prior to the performance of such extra work, nor shall any extra work be allowed or paid for, in any event, unless the

same is first allowed and paid for by the owner to the contractor."

(Note. Appellant does not contend that he is not liable for these extras because the owners have not yet paid him.)

The following is also stamped across the face of the contract:

"No additional costs will be authorized without a purchase order issued by Mitchell Construction Co."

told to "go ahead and paint it and then they [the owners] would take care of it." Martin also testified that if he spoke, he spoke for Mr. Mitchell.

Obray, as Mitchell's subcontractor, is therefore entitled to recover from Mitchell the value of the services performed. See *Chartres Co. v. Abraham*, 241 So.2d 276, (La.1970); *Causte v. Board of Chosen Freeholders of Essex County*, 9 N.J.Misc. 2, 152 A. 640 (1930); *McGowan v. Gate City Malt Co.*, 89 Neb. 10, 130 N.W. 965 (1911).[3]

■ Mitchell also contends that he should not be liable for this work because it was "necessitated by deficiencies in plaintiff's own services." In this sense, Mitchell is arguing that the work which was performed by Obray is not "extra" work, which would entitle Obray to additional compensation, but "additional" work, which is of necessity performed in fulfilling the original contract. The distinction was set forth by the Washington Supreme Court as follows:

> "Extra work means work done which is not required in the performance of the contract, something done or furnished in addition to or in excess of the requirements of the contract. The distinction between extra work and additional work is that the former is work arising outside and entirely independent of the contract, something not required in its performance; the latter is something necessarily required in the performance of the contract and without which it could not be carried out. 13 McQuillan, Municipal Corporations § 37.165, p. 477 (3d ed. 1950).

> "McQuillan says, at pages 482–84:

> "Obviously extra compensation is not allowable for doing work covered by the contract notwithstanding it proves to be greater than anticipated when the contract was made; as necessary excavations through rock in constructing a sewer, or unexpected difficulties caused by rocks in the ground, or extra work in repairing

damages to the work necessarily made in order to complete the contract in a proper manner, and a promise to pay therefor is without consideration." *Dravo Corp. v. Municipality of Metropolitan Seattle*, 79 Wash.2d 214, 484 P.2d 399 (1971).

There is no evidence in the record suggesting that the work performed by Obray was additional work as opposed to extra work. As such, Obray is entitled to extra compensation for all of the work performed after returning to Colorado.

■ Mitchell next contends that the trial court erred in refusing to allow him to amend his answer to include the affirmative defense of estoppel. At the close of the defendants' case, he moved the court to amend the answer to conform to the evidence pursuant to I.R.C.P. 15(b). Mitchell maintains that at one time Obray was asked to submit a claim for all "extras" incurred with respect to the condominiums, which he did, and that he should now be estopped to assert a claim for any extras which were not submitted at that time.

I.R.C.P. 15(b) provides:

> "When issues not raised by the pleading are tried by express or implied consent of the parties, they shall be treated in all respects as if they had been raised in the pleadings * * *."

The trial court has wide discretion in permitting amendments of pleadings to conform to the proof. *Cameron Sales, Inc. v. Klemish*, 93 Idaho 451, 463 P.2d 287 (1970); *Grieser v. Haynes*, 89 Idaho 198, 404 P.2d 333 (1965); *Dickerson v. Brewster*, 88 Idaho 330, 399 P.2d 407 (1965). Where evidence of an estoppel is received without objection it becomes an issue in the case and may be acted upon by the court although not pleaded. *Loomis v. Church*, 76 Idaho 87, 277 P.2d 561 (1954); and see *Garren v. Butigan*, 95 Idaho 355, 509 P.2d 340 (1973). Thus, the ruling of the trial court will be reversed if the record indicates it was an abuse of discretion to deny the motion to amend the pleadings pursuant to I.R.C.P. 15(b).

---

**3.** In both the *Causte* and *McGowan* cases the general contractor was held liable where his superintendent had verbally authorized the ex-

tra work despite a contract provision requiring extras to be authorized in writing.

The doctrine of "quasi-estoppel" is properly invoked against a person asserting a claim inconsistent with a position previously taken by him, with knowledge of the facts and his rights, to the detriment of the person seeking application of the doctrine. *Evans v. Idaho State Tax Commission*, 97 Idaho 148, 540 P.2d 810 (1975). The doctrine is distinguished from an estoppel in pais in that no concealment or misrepresentation of existing facts on the one side, nor ignorance or reliance on the other, is a necessary ingredient. *Evans v. Idaho State Tax Commission, supra.*

In the case at hand the trial court could reasonably have concluded that Obray did not take an inconsistent position in that he never intended the first list of extras to be all inclusive or the court could have concluded that Mitchell suffered no detriment as a result of the list not containing all the extras. While amendments to pleadings should be liberally allowed, the ruling of the district court will not be overturned absent a showing of abuse of discretion. Appellant has not met this burden.

After the district court filed its memorandum decision, Mitchell filed a petition for reconsideration of the memorandum decision. Before ruling on this motion the court entered its findings of fact, conclusions of law and judgment. The court set the petition for hearing, treating it as a motion to amend judgment and for reconsideration. The court ordered that its judgment stand with the exception that the award of interest be deleted.

Mitchell argues first that this hearing should have been held prior to the entry of the findings of fact and conclusions of law and, second, that the court applied the wrong standard in stating that its findings would stand if there is substantial, although conflicting, evidence. Mitchell maintains that this is an appellate standard and that the court should have instead weighed the evidence as in the first instance.

The Idaho Rules of Civil Procedure do not provide for a petition to reconsider a memorandum decision. As such, the district court correctly treated appellant's petition as a motion to alter or amend judgment pursuant to I.R.C.P. 59(e).[4] Furthermore, even assuming that the district court applied the wrong standard in reviewing its judgment, appellant has failed to show how he was thus prejudiced. Harmless error is not grounds for reversal and appellant has not met his burden of showing prejudicial error. See *Annau v. Schutte*, 96 Idaho 704, 535 P.2d 1095 (1975); *American Ry. Sup. Ass'n v. Union Pac. Lodge No. 145*, 92 Idaho 925, 453 P.2d 574 (1969).

Finally, Mitchell contends that the trial court erred in admitting certain of respondent's exhibits into evidence. These exhibits basically set forth the charges for the extras as claimed by Obray with respect to the two condominium projects. (Given our subsequent resolution of the claim for extras with respect to the Shareholders Condominium, only those exhibits referring to the Wild Irishman Condominiums need be discussed at this time.) The first of these exhibits was prepared for trial by Obray and is a dated compilation of the amounts billed to and paid by Mitchell on the Wild Irishman Condominiums. The bottom line shows a balance due of $12,710.28 and indicates that Mitchell tendered a check on August 20, 1974 in the amount of $1,613.96 which is being held but has not been cashed by Obray. The second exhibit is a breakdown of the specific extras performed by Obray showing the amount charged per each and the date billed. This exhibit indicates that $11,816.55 of extras were billed on May 4, 1973 and an additional $7,397.44 on July 10, 1973. The first exhibit indicates that Mitchell paid $6,667.29 on these extras July 1, 1974. The last exhibit is a photocopy of an actual business record which is a running statement of work billed, payments made and balance due.

---

4. "Rule 59(e). Motion to alter or amend a judgment.—A motion to alter or amend the judgment shall be served not later than ten (10) days after entry of the judgment.

With reference to the first two exhibits, I.C. § 9–411(5) indicates that secondary evidence of original documents is admissible where the originals are so numerous that they cannot be examined in court without great loss of time. With reference to the third exhibit, I.C. § 9–417 states that photocopies of original documents are admissible if the copies were made in the regular course of business. Appellant objected to the admission of these documents on grounds that respondent had not laid a proper foundation for their admission. This contention appears to be correct. There is no foundation testimony in the record establishing that the original documents from which the first two exhibits were prepared were so numerous as to be burdensome to bring into the courtroom; and there is no testimony that the third exhibit was copied in the regular course of business.

On appeal, appellant maintains that he was prejudiced by the admission of these exhibits because they were the only evidence of the fair value or cost of the extra work performed by Obray. However, the record indicates that Obray testified that the amount due him for the work he performed in connection with Wild Irishman was $12,710.28. The reasonableness of this figure was not disputed or contradicted by any other evidence, nor was there any testimony that the work was not in fact done. In addition, upon admitting these exhibits the trial judge reminded appellant that he would have the opportunity to controvert the figures contained in the exhibits during cross-examination. This he failed to do. Again, appellant has failed to meet his burden of showing prejudicial error and regardless of the admissibility of these items of evidence, their admission is not grounds for reversal.

With respect to the extras claimed on the Shareholder project, Mitchell does not assign error to the district court's determination that the amount due Obray was $1,629.14 nor to the finding that the parties had agreed to a $500 settlement to which they were held by the trial court. Obray, however, in his cross appeal, contends that the time for completion of the compromised agreement had expired prior to trial and that he is now entitled to the full $1,629.14.

In awarding judgment for the $500, the district court found that Obray had not yet withdrawn his offer at the time the $500 check was finally tendered, that the compromise constituted an account stated, and that although almost a year had passed since the compromise was agreed upon, there was no evidence that this length of time was unreasonable.

Where no time of performance is expressed in a contract the law will imply that it shall be performed in a reasonable time. See *Curzon v. Wells Cargo, Inc.*, 86 Idaho 38, 382 P.2d 906 (1963); *Williams v. Idaho Potato Starch Co.*, 73 Idaho 13, 245 P.2d 1045 (1952). Here the finding of the trial court that the compromise offer was accepted within a reasonable time is supported by substantial and competent evidence and will thus not be disturbed on appeal. See *Matter of Webber's Estate*, 97 Idaho 703, 551 P.2d 1339 (1976); *Idaho Water Resource Board v. Kramer*, 97 Idaho 535, 548 P.2d 35 (1976).

Obray's other assignment of error on his cross appeal is that the district court erred in deleting the original award of interest on his claim in Count I. The district court stated that it was unclear from the evidence as to when the amount of the extras became due, or at least when the defendant was fully aware of the amount claimed, and that prejudgment interest should therefore not be allowed.

Interest should be allowed as a matter of law from the date the sum became due in cases where the amount claimed, even though not liquidated, is capable of mathematical computation. *Taylor v. Herbold*, 94 Idaho 133, 483 P.2d 664 (1971). In this case, however, the record is far from clear as to when the Wild Irishman extras became due. Interest, there-

**540**

fore, shall be awarded from the date the action was commenced. See *Stamler v. Kissinger*, 154 Cal.App.2d 239, 315 P.2d 887 (1957); *Puritan Pie Co. v. Milprint, Inc.*, 494 P.2d 850 (Colo.App.1971).

The judgment of the district court is affirmed, but is remanded with directions to award interest on the award of $12,710.28 from the date the action was commenced and also to determine if the $500 award on the Shareholders' claim has been paid, if such sum was inadvertently omitted from the final judgment.

Costs to Respondents.

DONALDSON, SHEPARD and BAKES, JJ., and SCOGGIN, D. J., Retired, concur.