700 P.2d 141

**Fred McFARLAND and Drena McFarland, husband and wife, Plaintiffs-Appellants,**

v.

**JOINT SCHOOL DISTRICT NO. 365 IN ELMORE AND OWYHEE COUNTIES, Idaho, A Public Corporation, Defendant-Respondent.**

**No. 14693.**

Court of Appeals of Idaho.

May 1, 1985.

Dennis J. Sallaz, Michael J. Doolittle (argued), Sallaz and Scanlan, Chartered, Boise, for plaintiffs-appellants.

Perce E. Hall, Don Lawrence Roberts (argued), Hall & Friedly, Chartered, Mountain Home, for defendant-respondent.

BURNETT, Judge.

This is an appeal by the purchasers of real property from a judgment allowing forfeiture under an installment sale contract. The district court ruled that the buyers, Fred and Drena McFarland, did not make timely payments and that the resultant forfeiture did not constitute a penalty for which the seller, Joint School District No. 365, would be required to pay restitution. On appeal, the buyers contend that the seller waived any right to demand timely payment on the contract or, alternatively, that the parties orally modified the contract to extend the time for payment. The buyers also challenge the ruling that no restitution is required. We affirm the judgment insofar as it allows forfeiture; but for reasons explained below, we remand the issue of restitution for further consideration.

The installment contract relates to land where an old, unused school building once was located. Prior to execution of the contract, the school district sold salvage rights for building materials to a third party who, in turn, assigned them to the McFarlands.

The school district then contracted to sell the property itself to the McFarlands. The total sale price was $15,000. The buyers made a down payment of $1,000 and were to pay the balance of $14,000 approximately ten weeks later. The contract provided that "time is of the essence." The contract further provided that if the buyers defaulted the seller would have the right, after fifteen days' notice, to declare a forfeiture and to retain all sums paid by the purchasers.

After signing the contract the buyers decided to reconstruct part of the building rather than to demolish it entirely. They tore down portions of the building and began to remodel the remainder. Meanwhile, the deadline for the $14,000 installment passed without payment. Ten months later the buyers received a notice of default. The buyers then made, and the seller accepted, a partial payment of $5,000. Nearly three more months elapsed without further payment, and a second notice of default was sent to the buyers. No payment was made. Following a meeting between Mr. McFarland and school officials, a third and final notice of forfeiture was sent to the buyers. Again, no payment was made. The seller declared a forfeiture. This lawsuit followed.

## I

■ We first consider the buyers' contention that the seller waived all right to demand timely payment on the contract. The buyers postulate such waiver upon the seller's inaction for ten months after the first default and upon the seller's subsequent acceptance of the $5,000 partial payment. We disagree. It is well settled that:

> [w]here a contract for sale of real estate makes time of the essence, and provides for a forfeiture of the vendee's rights for failure on his part to make payments at certain times, a continued course of conduct on the part of the vendor in failing to declare a forfeiture, thereby leading the vendee to believe that the vendor waives a strict compliance with the terms of the contract, works a waiver of the vendor's right to declare a forfeiture, *unless and until he gives the vendee reasonable notice of his intention to do so, and a reasonable opportunity to make the delinquent payments.* (Emphasis added.)

*Sullivan v. Burcaw*, 35 Idaho 755, 763, 208 P. 841, 843 (1922).

In this case, it is undisputed that after ten months of inaction the seller demonstrated a clear intention to enforce its right to declare a forfeiture. It sent the buyers a notice of default. After the payment of $5,000, second and third notices of default were sent. This sequence of events shows that the seller repeatedly notified the buyers of its intent to enforce the forfeiture provision of the contract. To be sure, the seller extended the time for payment; but it is clear, as a matter of law, that the seller did not waive all right to demand timely payment.

■ The next question is whether the extended time for payment had expired when the seller issued the third and final notice of default. The buyers contend that the meeting between Mr. McFarland and school officials produced an oral agreement fixing a new date for paying the balance of the contract and that the deadline had not passed when the final notice was sent. However, three school officials who attended the meeting testified that the new deadline was conditioned upon McFarland's procurement of a "letter of guarantee" from another party. No such letter was obtained. Upon this conflicting evidence the trial judge found that the parties did not mutually agree upon a discrete deadline but that the time for payment was extended indefinitely. This finding is not clearly erroneous and, therefore, it will not be disturbed. I.R.C.P. 52(a).

■ The trial judge then ruled that the buyers did not pay the balance of the contract within a "reasonable time" and that the seller's last notice of default was proper. We agree. When no specific time for performance is established by contract, the law implies that performance must occur in

a reasonable time. *Obray v. Mitchell*, 98 Idaho 533, 567 P.2d 1284 (1977). The buyers had approximately five months after the $5,000 payment, and nearly one month after the meeting with the school officials, to make the final payment before the last notice of default. We hold, as did the trial judge, that these were reasonable periods and that payment was past due when the final notice of default was sent.

We also have considered other arguments advanced by the purchasers in opposition to the forfeiture. We find them unpersuasive. Accordingly, we conclude that the forfeiture was properly declared by the seller and allowed by the court.

## II

We next examine the buyers' contention that they are entitled to restitution for an alleged increase in the value of the property, due to improvements made during remodeling, while the contract was in force. As noted earlier, the buyers undertook to remodel part of the old school building. This project had been partially completed when the forfeiture was declared.

When a forfeiture occurs under an installment sale agreement, the seller essentially receives liquidated damages in the form of the payments retained and the value of property returned. If such liquidated damages are exorbitant, bearing no reasonable relationship to actual damages caused by the buyer's breach, equity will intervene to compel restitution. *E.g., Graves v. Cupic*, 75 Idaho 451, 272 P.2d 1020 (1954). The burden of proving that the liquidated damages are exorbitant rests upon the buyer. It must be shown that the value of property reverting to the seller, together with payments retained, is disproportionate to the seller's actual damages. *McEnroe v. Morgan*, 106 Idaho 326, 678 P.2d 595 (Ct.App.1984).

In this case the district court found that the buyers failed to meet their burden of proof because they did not establish the value of the property when it reverted to the seller. The court considered several types of evidence offered by the purchasers on this point. The judge heard testimony from Mr. McFarland to the effect that with slight modifications the remodeled structure could be utilized for apartment dwellings. The superintendent of the school district acknowledged that such an idea had been considered but the district had taken no steps to implement it. However, no market value was specified in this testimony.

The judge also heard opinion testimony from Mr. McFarland that the property, although purchased for $15,000, had acquired a market value of approximately $80,000. The judge admitted this testimony over the seller's objection but later ascribed it no weight in his findings of fact and conclusions of law. McFarland, a building contractor, was not qualified as an expert in appraising real property. Of course, the owner of property may testify as to its value. *Weaver v. Village of Bancroft*, 92 Idaho 189, 439 P.2d 697 (1968). The owner is presumed to be familiar with the property's current value, by reason of inquiries, comparisons, purchases and sales. *Rankin v. Caldwell*, 15 Idaho 625, 99 P. 108 (1908). However, when McFarland testified, he was not the owner of the property. His status as a contract purchaser had been terminated by forfeiture, and he had been dispossessed, approximately two years before trial. Although he was not a total stranger to the property, his testimony was not necessarily entitled to the weight accorded that of a current owner. He stated no basis for his opinion. In these circumstances we hold that the district judge did not err by refusing to rely upon McFarland's opinion testimony.

McFarland further testified, as did another building contractor, that the cost of replacing the partially remodeled structure would have been approximately $70,000. The district court ascribed no significance to this testimony, observing simply that it was not evidence of the fair market value of the property. We agree with the court that a distinction exists between replacement cost and fair market

value. However, "[e]ven the most outspoken critic of so-called 'replacement-cost' valuations would hardly contend that this type of cost has no bearing whatever on value." 1 J. BONBRIGHT, THE VALUATION OF PROPERTY 153 (1937). Such evidence cannot be categorically rejected. Replacement cost ordinarily establishes an upper limit of market value. However, it is an appropriate measure of the value itself only in exceptional circumstances where the relevant market for the property in question is difficult to define or where it is highly likely that the property would be replaced if destroyed. *Id.* at 150–76. Whether such circumstances exist in the present case is a question of fact for the trial court to consider. Because the court made no findings in this regard, and because we do not deem the answer to be obvious upon the record before us, we hold that the question should be addressed on remand. *Pope v. Intermountain Gas Co.,* 103 Idaho 217, 646 P.2d 988 (1982). The judgment, insofar as it denies restitution, must be vacated for this purpose.

For guidance on remand we note that the buyers also offered into evidence cancelled checks, coupled with testimony that the checks represented payment for labor and materials expended on the remodeling project. The judge admitted the evidence over objection, but later gave it no weight because the checks themselves did not indicate, on their faces, that they pertained to work on the property in question. We believe the court's reason for disregarding the evidence was erroneous. The buyers' testimony was a permissible means of correlating the checks with work on the subject property. The larger question, however, is what weight, if any, such evidence should have been accorded on the issue of property valuation. The checks merely purported to show the buyers' expenditures on the remodeling project. They did not establish value per se. Like the evidence of replacement cost, such expenditures would be relevant to determining value only if the market for the property were ill-defined or if a similar investment in labor and materials likely would be repeated if the structure were destroyed.

In sum, although the buyers failed to present direct evidence of the property's market value in support of their claim for restitution, they presented evidence of its replacement and investment costs. In certain circumstances such costs may be treated as measures of the property's value. The district judge must determine on remand whether those circumstances exist in this case. Accordingly, the judgment below, as it relates to restitution, is vacated and the case is remanded. However, insofar as the judgment pertains to forfeiture, it is affirmed. No costs or attorney fees on appeal.

WALTERS, C.J., and SWANSTROM, J., concur.